Good morning, Your Honors. May it please the Court, Ryan Tucker on behalf of the Union Gospel Mission of Yakima Washington, I'd like to reserve three minutes for rebuttal. The Washington law against discrimination prohibits the Mission's ability to hire only employees who share its religious beliefs on marriage and sexuality. Just last month, this Court held Seattle Pacific University, a Christian college with nearly identical religiously based hiring practices and policies, had pre-enforcement standing to challenge these aspects of the WLAD. Like SPU, Seattle Pacific University, the Mission has pre-enforcement standing to protect its constitutional rights. And below, the District Court correctly held that the Mission's hiring practices were effective with First Amendment interests and arguably prohibited by the WLAD. But it incorrectly held no credible threat of enforcement. Despite repeated threats from the Washington Attorney General's Office on the same subject matter, past Commission complaints related to the WLAD, a viral social media post condemning the Mission's policies, as well as receipt of job applications from those who disagree with their faith. Why can't the Mission, it might later on, assert the recognized ministerial exception that the State Court has recognized as to these employees? Well, Your Honor, the Mission doesn't have to subject itself to a complaint process under STEFL. It doesn't have to put a target on its back in order to redress its grievances. It can go first to the Court on a First Amendment basis. But I guess that comes back to what the First Amendment basis is. Under federal law and the ministerial exception cases, that is the exception that exists. And that would be one that the Mission would need to prove in order to enjoy that exception as other religious organizations have in the past. Well, you could do so both affirmatively and defensively. Look at the Seattle Pacific University case. That's what they were doing there. They were saying, we have the ministerial exception and that was applied just a month ago. But in those ministerial exception cases, again, looking at the Supreme Court, as the Washington State Supreme Court also looked at, there were investigations to determine the ministerial exception. Do we have any cases from the Supreme Court suggesting that a religious organization would be immune from at least that level of inquiry to determine the ministerial exception? Well, unfortunately, we've only got Hosanna Tabor and Our Lady. Well, and that's quite a bit for you, isn't it? Well, it is, obviously extremely helpful. But to Your Honor's question, you know, Hosanna Tabor lists some factors and Our Lady came back and said, listen, you want to look to see what the actual individual does. But we can we can use it both in the defensive capacity, as Your Honor mentioned, but also in this context. Just to step back for a moment, the way this has has been set up for decades, about 70 years, the state of Washington had a religious exemption in the law, much like everyone else in the United States. But when they they took that exemption and they narrowed it down to only cover ministerial employees, now all of a sudden in the state we have these non-ministerial positions where religious organizations are exposed. When you say they, you're talking about the Supreme Court of Washington? That's correct. That's correct, Your Honor. And so Washington is an anomaly. There are no other states. I mean, most of the states have, you know, in essence, Title VII equivalents, where you've got a religious exemption. The state of Washington narrowed that to where now every single religious employer in the state is exposed for their non-ministerial positions. And so that's the genesis of this. And how is that, I guess, plenty of briefing on this, but could you restate the First Amendment injury that that imposes, given Hosanna Tabor and Her Lady? Well, it's the ability to hire, to discipline, to fire those that are like-minded. This mission is comprised of Christian individuals with certain tenets. And maybe this goes to the merits, but the Supreme Court hasn't gone that far, has it? The Supreme Court has not gone there yet. No, that is correct. But there are appellate courts. And even in the Ninth, we have language that we can look at. There are the Fifth, the Third. Several courts of appeal have looked at this. And a number of the courts that haven't even specifically addressed it say, if you take away the exemption, the religious exemption out of Title VII, then you create the federal constitutional issue. In fact, Justice Alito, I think it's very important to look at the statement on the cert denial. I believe it's on page 5. Justice Alito said, if these religious organizations are not able to commune, to hire, to discipline those that are like-minded, then what you will have is a tearing away of the very fabric of those religious institutions. How is the Washington State Supreme Court's inconsistency with respect to denial of cert? How does that amount to an injury in fact for your clients? Well, Your Honor, there are several reasons for that. I think at the district court level, the one that the court focused on was the credible threat. And so I think what you're going to hear from the other side is whether or not there is a credible threat. There are several reasons, I think, why the district court erred there. I think to start, it's important to look at the Thomas factors are not a checklist to be checked off one by one. You look at them as a whole. And that's what we said in Tingley essentially, right? That's exactly right, Your Honor. In fact, if you consider a string of cases, Tingley, you look at Caltrucking, you look at Arizona v. Yellen, you look at SBA lists, or I'm sorry, Seattle Pacific, and certainly SBA lists at the Supreme Court level, each of those underscore how standing is appropriate here. So if the district court correctly held, one, a concrete plan, and I think second to Your Honor's question, the second and third factors, the specific threat and past enforcement is where I think she really missed in her analysis. Now, there are multiple ways that you can satisfy these Thomas factors. And the Ninth Circuit, in fact, has even gone so far as to say that courts have found standing where no one has ever been prosecuted under the challenge provision. That's the L.S. Mr. Tucker, this is a very helpful discussion. I'm trying to figure out. We talk a lot about I guess we'd start from the point that with respect to standing, constitutional injuries under the First Amendment are special. I'm trying to sort out in the cases. There's a lot in the First Amendment. Whether we're talking about the first part of the First Amendment with respect to speech, where I think it's well established in that case. What about with respect to the clauses? Is there well-developed authority that says that that's also included? I mean, we have Dry House and others that seem to suggest, okay, well, free speech, yes. On the religious claims, would we apply the exact same tests? Your Honor, the SBA list is the test. When you're looking at whether or not we've met our burden, understanding, you look at Susan B. Anthony list. And what's really interesting about SBA list, SBA list... What was the First Amendment claim in that case? Well, it was speech. Okay. So, but is there... I don't think speech has been recognized as special. Why does that carry over to religion? It's the pre-enforcement standing piece. There's no differential between the two. There's not a separate standard that one must obtain. You look at Susan B. Anthony list as the base. And when you look at that case, SBA list, you have two cases that were consolidated. The second case was brought on behalf of an entity called Coast. What's interesting there is Coast did not receive a complaint. And my friends on the other side suggest, well, you know, we didn't reach out to you. We didn't know who you were. We didn't have to. Coast didn't either. That's SBA list. So we have Supreme Court authority. We have an abundance of Ninth Circuit precedent that says the same thing. And, you know, just to step back for a moment, just practically speaking, the simple reality is we have 150 employees, some of which are ministerial as we pled, some of which are not. This entity has watched the state attorney general make very clear that if you have non-ministerial employees and you believe in biblical sexuality, then that is a violation of the WLAD. That is sexual orientation discrimination. So recognizing that problem. Is that a necessary connection? In other words, is it possible for people who are not? Your objection here is co-religionists. That's the right you're asserting. That's correct, Your Honor. Is it possible to hire someone who, for example, may be celibate, who may have a different sexual orientation, not to be a co-religionist? Because that's what the statute is concerned with, sexual orientation. You're concerned with co-religionists. Are those co-extensive in this case? Well, certainly those aren't the facts here, Your Honor. This is a as applied challenge. And we've stated in our statement of faith that, you know, those that act on that are in those relationships, they cannot work at this institution because that's part of our statement of faith. And I think the ultimate question here is whether or not this institution can hire non-ministerial employees. That's that's the ultimate question. Let me ask you this. How would you respond to the argument that the facts of Dry House cut against your argument in this case? Well, Your Honor, as I mentioned, I think I think they're spot-on that that we that we spot on meaning that we have standing under under SBA list. You consider the fact that concrete plan as the district court held, when you look at the specific threat, you look at past enforcement. I mentioned earlier that explicit warning isn't needed. If you look at, as Justice or Judge Bennett mentioned, in Tingley, that was underscored. There's a reference there to to that law as well. SBA list, again, says that Coast, which did not receive a complaint, has standing. The threats against SPU alone are enough because you look at the the conduct. You don't look at whether or not they get a specific. Again, argument, though, if the Attorney General were to say, you know, we're not going to pursue this, we promise. Would that make a difference? Oh, absolutely. We've not heard that. I understand that. That's and that where they just say that. Well, what difference would that make? A humongous difference. If they could stand up here right now and disavow and we'd all go home. And we we talked about that in our prior cases. Exactly. And that's and that's why standing really was held in the case just a month ago in SPU. And so I would again, if they stand up here and say, we're not going to enforce this, then I don't I don't have a dog in the fight. If they stand up here and say, well, no, we are. Or if they don't answer the question that I have every reason to be here. I think that question will be coming to your friend. Thank you, Your Honor. So I'll preserve my time. Very well. All right. Let's hear from the Attorney General. Mr Day on, please. You say Jay on or day on? Done. Done. Thank you for asking. Good morning. May it please the court. Daniel John for state appellees. Union Gospel attempts to create standing by pleading a litigation position that directly conflicts with these employment records that must be taken as true at this stage. It brought this case in search of a controversy and the district court properly rejected its attempts to manufacture standing. This court should affirm and I'd like to highlight two reasons this morning. The first is that Union Gospel faces no threat of enforcement, let alone the substantial threat of enforcement that is required to bring a pre-enforcement. Do you disavow? Does the Attorney General disavow enforcement? And, Your Honor, we disavow enforcement with respect to ministerial employees and with respect to all of the records that we have in this case. I'm taking that as a no, that you are not disavowing enforcement of this statute against the plaintiff. Your Honor, with the records that we have before us and the records that we must take as true at this juncture, that suggests that every employee that they have is a minister. And I'd like to point to the fact that they have a they include their statement of faith and their statement of faith says that every single employee that they have that they consider every single employee they have is a minister. That's the beginning of ER 424. Every employee. If that's the case, if they declare that they're a minister, that's a religious doctrine, right? The answer would be legal as well. Maybe so. But I mean, the reality is you're not asking us to investigate the ecclesiastical basis for the determining whether someone is a minister, right? Of course not. Yes. So if you assume that they are in a position to say all of our folks here are ministers and co-religionists, given that fact, are you prepared to respond to my colleague's question? Is the Attorney General of Washington prepared to say that you will not seek to prosecute the case against these folks? Your Honor, based on the record that we have before us and we must take as true, we haven't investigated the union gospel. So we're not you're saying you can't say I think based I think absent anything that shows the contrary, we have no intention of investigating Mr. John, you say that it's a question of law. And we've got we've got two sides, a immovable object or irresistible force. Both of you are exercising your your rights to state your positions in this controversy. But if it's a question of law, would that preclude any investigation into the mission if they decided to stand by your assertion that that they're all subject to the exception with no other contrary information? But that's a question of right. So part of the injury here is a lot of the injury. And I want to turn to SBU pretty soon is the very investigation. And so when you say it's a question of law, but then you come back to all of the evidence that we have, it's at least their assertion. And maybe this still isn't enough for Sam, but it's their assertion that that gathering of evidence, the investigation is the injury. Would you need an investigation to make a determination or agree with their assertion that they're all subject to the ministerial exemption? No, we wouldn't investigate unless there was something to show the contrary. And I think the record that we have, though, indicates that it's there's nothing to there's nothing here. And every agreement that every employee signs when they work at Union Gospel Missions, you say, forgive me, you say there's nothing here. And that's because they're saying that everyone is a co-religionist and everyone is a minister. Is that what you're saying? Because the job duties and the descriptions of what those positions that they hope to hire for include duties like they are going to minister to their customers. Let me take it a step further. If they were to put in writing, maybe they have. I haven't seen it. But if they were to say that because we hire only co-religionists have these views, we treat all of our employees as ministers. Would that in the case from the perspective? I don't I don't think that would prompt us to investigate. And I guess I don't I certainly not what we have here. I think what we have here is the is the record that Union Gospel is going back to what we said before you. I don't think under constitutional law you could investigate or ask us to investigate the religious tenets of the organization. Right. Right. So they say as a matter of our construction of scripture and our belief in various provisions flowing there from, we believe that all of our employees are ministers. That's in the case. Right. From your perspective, that's not a concern, your honor, because what determines whether someone is a minister under Our Lady of Guadalupe and Osana Tibor is sort of is an inquiry into what they do. Yes. So. So, yes, I understand that you're saying what what I assume is General Ferguson's position here, which is that we can't necessarily take their word for it and we're not required to necessarily take their word for it. And if they're saying everybody's a minister, but they're really not a minister because of their job duties, we have at least the right to look at it. I think that's right. But I think that's different from the case that we have here, your honor, where Union Gospel has attached all of these job duties and descriptions that include things like they are to minister to their staff, they are to minister to customers and donors. Those are all attached to the complaint. It must be taken as true. So they're kind of like everybody's a missionary, everybody's spreading the gospel. And they say that makes them a minister. What's the problem? We don't have a problem with that. Well, then why can't you disclaim enforcement? Because we're disclaiming enforcement if we're with respect to what the record that we have. I think certainly if there's. I guess we need more beyond the record. So do we need more beyond the record other than their statement of faith and what their mission is? I don't think at this juncture, and certainly it's Union Gospel's mission to show standing. And I think based on what we have, and there's no reason to believe that any of this is not true. There are no concerns on our end. You know, the council, what they're seeking to do is to get a declaration. They're seeking to be able to advance their claim. And it strikes me that the state wants it both ways here. Although I can understand why the state is making the argument. But it seems like the state is saying that, you know, they haven't alleged enough to even make a claim that there's a potential problem here. But that the state is saying, well, you know, sort of based on what we sort of know now, there's nothing we're going to be doing here. But we can't tell you that if we looked at it a little further, we wouldn't. And I mean, it just seems to me that based on that, they at least have the right to go forward. And you may absolutely prevail on the merits. But all they're seeking to do is to make their claim. And I guess to that point, Judge, I'd highlight two things. And the first is that at this stage, it's Union Gospel's burden to show standing. And I think based on the record that they've provided that we all must take as true, including this court, there doesn't seem to be a problem. And so it's not us having it both ways. It's just that at this stage, based on the record that we have and are taking as true, they haven't met their burden of showing that they can advance this claim. For purposes of this case, though, you understand that if you were to say, based upon their representation, that everybody is a minister under their construction of the gospel, and they're co-religionists, they have their beliefs, we're not going to touch that. That would kind of end the problem. But you don't want to do that, which suggests to the court, anyway, that as my colleague puts it, you want to have it both ways. I think I would go a little bit further, Judge Smith, and just point to the fact that they have provided the statement of faith. They have provided these job descriptions and job duties that include these ministerial duties, right? And that's why we say that, because of the submission of the case. Well, for example, almost anybody that belongs to any religion that has an evangelical aspect, you can have janitors out there preaching the gospel to co-religionists, or talking to people on the streets, and under their doctrine, perhaps that's what they mean is a minister. But you can't get beyond that, can you? I don't think in this posture, and I guess I would point this court to its decision in Seattle Pacific University, where it said that asking who is a minister and who is not a minister, that is fair game. Okay, well, I guess the Seattle Pacific looms large here. Is there any, would you draw any other distinction between that case and this, and the standing holding there? Many are. Than that your office sent a letter? I think there are other key factual differences, Your Honor. The first being that, one, Seattle Pacific University didn't create this record of its non-ministerial employees having ministerial duties. That's one key distinction. The other distinction, I think, is that I don't think that it is correct to say that Union Gospel has standing simply because another entity has standing. Union Gospel still needs to show that it faces a substantial threat of enforcement. And based on the record that it has provided, that just simply isn't the  And so, in what ways are they materially differently situated? Set aside the stage of the investigation, because at some point, the idea of a pre-enforcement challenge doesn't work if you have to send a letter to start the challenge. So, in what other ways are they differently situated other than the stage of the investigation process? The record that Seattle Pacific University has is substantially different from the record that we have in this case, Your Honor, which includes Union Gospel's statement of faith. It includes their job descriptions. It includes this agreement that every employment acknowledge that Union Gospel requires all staff to engage in acts of Christian ministry. These are all very different factual scenarios which suggest that Union Gospel Mission does not have a credible threat of enforcement, that this law will be applied against them. So why is the state keeping in its back pocket the opportunity to enforce its anti-discrimination law against this organization that you seem to have all the information you need to determine whether the law applies? I don't think we can... Because the factual scenario matters, Your Honor, and I think it is a totally fair game, as this court put it in Seattle Pacific University, to ask whether or not someone is ministerial. Certainly, the organization can say it. Absent any other information to the contrary, we have no reason to disbelieve it. That's particularly true here. You have an answer to that. In other words, you now have your answer to that question by virtue of the complaint. You didn't have to send them a letter. They provided all the information that you likely would have asked, and maybe did ask, of Seattle Pacific. Based upon your, I'll call it unwillingness to commit not to do anything, under Seattle Pacific, is there any reason why we shouldn't reverse and remand the district court to flesh this out? I mean, right now we're talking about pleading. You're saying you're not going to disclaim a right to prosecute. SPU says, hey, well, that's maybe enough. Haven't they established, then, sufficient Article III standing to send it back to the district court? I don't think so, Your Honor. And I guess I would point to one that we have — there has been no enforcement — there's no history of enforcement. Well, I understand that. We all get that. But the reality is the case law is pretty clear that when you have a constitutional right to practice a religion and there's a threat from the perspective of the religionist, the Supreme Court's given us a little leeway, SPU gives us a little leeway. Basically, people have a right to defend themselves at an earlier point than they might in certain other types of categories because a constitutional right is involved. So I get back, then, to the question, again, given your unwillingness to say you're not going to prosecute these people, why would we not find, under our case law, the Supreme Court case law, that there is sufficient Article III standing shown and send it back to the district court? Because I think the factual differences here underscore the fact that union gospel, particularly, does not face a substantial threat of enforcement. I would point to the fact that oftentimes this Court will look to a past history of violations of the statute. For instance, in Tingley — Although in Tingley, we said the third factor concerning the history of enforcement carries little weight when the challenged law is relatively new. That's correct. And we're looking here at the, in that context, the Washington Supreme Court decision, right? Yes, but I think you're looking at Alcaltree versus Franciscan health systems, I believe, and that was decided by the Washington Supreme Court in 2014. And in that case, the Washington Supreme Court held that the Washington law against discrimination applies to religious entities in certain aspects. And so they have been — this has been a relevant statute. That was certainly at least fleshed out, though, more recently than 2014, right? In Woods, I think it made it more clear, but at the end of the day, the fact that the union gospel mission has been subject — the union gospel mission in every religious employer has been subject to the Washington law against discrimination since Alcaltree in 2014, a decade ago, means that the history of enforcement matters. And all we have here is this not — this letter that doesn't constitute enforcement that union gospel points to. That's the only instance — Although, again, and I apologize for beating a dead horse, but in our recent cases, we have talked about, in this exact context, the specific importance of a not — of the absence of a disavowal. So, I mean, in some ways, the Attorney General has the keys to this litigation in his own pocket, to borrow a metaphor from a different context. Sure. And I guess what I would say to that is that it is union gospel's burden to prove standing here, and we have disavowed everything that the record currently has. And so I don't see this disavowal as particularly — like, whole or anything like that. I don't think there's anything more needed. I mean, isn't one reason why the Attorney General can't reach a disavowal is Seattle Pacific itself, where we have said that the religious — the ministerial exception is not a free pass, so that to determine the state of that, the state is entitled to make further inquiries, which, in this case, may be the source of the injury in fact. Right. And that's exactly correct, Judge Thompson. And just quickly, I know I'm running out of time, but I just want to make this point, that I think part of the concern here is that if union gospel doesn't have standing, then how will it ever know this — the answer to this constitutional question? And I just want to point quickly to Justice Scalia's concurrence in City of Bernie v. Flores, where he said that, you know, however strongly we may feel about these constitutional principles, at the end of the day, the rubber needs to hit the road, and you need a case in controversy to decide the contours of that right. Well, you think this is a Goodyear case. Sorry? I'm being facetious. That's the rubber hitting the road. Sorry. Thank you, Your Honor. All right. Well, thank you. So we have some rebuttal time. Yes, Your Honor. Just very briefly, I think the fact that the State's not willing to disavow not just evidences the fact that we have standing, but it also underscores a very important practical point here. We have two positions that we needed to hire yesterday. We have our IT professional and we have an administrative assistant. We had hoped to hire those individuals over a number of years, job descriptions, now again for well over a year, and we need to hire them. So I would respectfully ask that not only does the Court find standing, but the Court also enter an injunction that covers not just those two, but also the multitude of other co-religionists that we would like to hire. Mr. Tucker, do you agree that even if the ministerial exception is a question of law under a standard that the State would be entitled to investigate to determine the application of that law to an organization? Well, yes, Your Honor. I think if, I mean, that's the basis of your claim for an injury. As this even, I think there's a little bit of conflating between the merits and standing perhaps in the Seattle Pacific case. But if you look at that, the Ninth has already said just a month ago that, you know, the Attorney General, the Commission has the right to ask, you know, the initial questions to see, you know, what was the hiring issue, you know. How is that, is the injury in fact that you're claiming any different from that or how would it differ? Well, I think in this, in the Seattle Pacific case, I think the position that SPU was taking is that the investigation itself was a First Amendment harm. And we're not saying here that they can't ask the question, that they can't look at the determination as to whether or not we have a minister or a non-minister. The issue, though, is if in the non-minister space, there you look to see whether or not the act that's being complained of can be tied to a religious belief of the institution. And if the institution's able to tie the religious belief to the act that's complained of, then I think the state can go no further. And the ministerial space... And that's, that's exactly the merits that you're trying to get to, if you assume... Yes, Your Honor. Yes, Your Honor. And we're asking for that. Not just, you know, we have two that we have the dire need for, but we also, as I mentioned before, are an institution with 150 employees. On any given year, we go through about, you know, by way of retirement or just attrition in today's society, we have about 50 or so people that we need to hire. And so this has been a tremendous issue from the moment the Attorney General started threatening enforcement. Very well. Other questions? Thanks to both counsel for your argument. Very helpful. Thank you, Your Honors. The case just argued is submitted.
judges: SMITH, BENNETT, JOHNSTONE